FOURNET, Justice.
 

 The plaintiff, Joseph S. Aucoin, as the owner of an undivided half interest in a
 
 *386
 
 lot measuring 200 feet by 115 feet, the northern boundary fronting on U. S. Highway No. 90 and the eastern boundary running along a shell road intersecting the highway, instituted this suit against John J. Greenwood, Sr., the owner of the other undivided half interest in the lot, to have the property owned by them in common, as well as the buildings and improvements thereon, partitioned in kind. He also claims half of the rental value of the land, which he alleges is worth $25 a month, to be computed from June, 1935.
 

 A number of preliminary pleadings were filed by both parties, all of which have passed out of the case except the exceptions of no cause and no right of action, which are being reurged in this court by the defendant. In his answer, the defendant denied that the property is susceptible of division in kind or that the plaintiff has any interest in the buildings and improvements thereon for the reason that they were placed there under valid contracts of lease wherein was contained the provision authorizing their removal by the lessee at the termination of the leases, further alleging that the plaintiff is estopped to contest the terms of the lease, having ratified and accepted the same.
 

 The trial judge rendered judgment ordering the partition of the property in kind, recognizing the defendant’s rights under the leases, including his right to remove the buildings and improvements on the leased premises, rejecting the plaintiff’s claim for rental, and taxing the costs of the proceedings equally between the plaintiff and the defendant. From these judgments both the defendant and plaintiff have appealed.
 

 The trial judge in a well considered opinion has accurately stated the facts aiid issues raised in the proceedings for the partition of the property, and, in our opinion, has properly disposed of the same after a discussion of the law applicable thereto. We, therefore, quote with approval from his opinion the following:
 

 “The record discloses that Napoleon Young owned a one-half interest in the lot involved with the right of usufruct on the remaining half as surviving widower, his children owning the naked ownership so burdened.' On January 18, 1928, he executed a lease of said lot in favor of Arnold K. ’ Dilzer for a period of five years at a rental charge of five ($5.00) dollars per month for the first year and ten ($10.00) dollars per month for the remaining ensuing years. On November 16, 1929, the said Young executed another lease in favor of his lessee covering said lot for an additional period of ten years commeiicng January 18, 1933, or at the expiration of the term fixed in the first lease, and at a rental charge of ten ($10.00) dollars per month for the entire ten year period. When the first lease was granted the lot of ground affected thereby was a barren waste. Both leases stipulated that the lessee ‘shall have the right to remove all the buildings and improvements placed on said property by him, at any time during the term of this lease or at its expiration.’ It is uncontested that the lessee, Dilzer, 'transferred and assigned his interest in both leases to the defendant* with all rights
 
 *387
 
 and privileges appertaining. During the course of these leases both the original lessee and the defendant, constructed buildings and other improvements.
 

 “On December 2, 1935, defendant purchased the one-half interest of Napoleon Young. On January 7, 1936, plaintiff purchased the one-half interest of all of the naked owners subject, however, to the right of usufruct in' favor of the said Yopng.
 

 “On June 2, 1'938, the said Napoleon Young waived and abandoned his right of usufruct by notarial act, transferring his interest as lessor in favor of plaintiff. Shortly thereafter, on November 6, 1938, Napoleon Young died.
 

 “Though plaintiff claims a one-half interest in the buildings and other improvements constructed on said lot and prays that he be recognized as owner thereof, in his brief he concedes such a demand is lacking not alone in law but in equity. He further conceded the failure on his part to offer proof in support of this claim, and as a consequence, we must consider this feature of the suit as being abandoned. As a consequence, by the very terms of the leases in question, defendant must be held to be the owner of all buildings and improvements constructed thereon with the right of removal as shall be hereafter dealt with.
 

 “Defendant re-urges his exception of no right of action. The Court previously disposed of this exception prior to trial on the merits and no facts have been presented which would justify a change in its former ruling.
 

 “Defendant contends that because the lot in question is burdened with an existing lease, and which shall not terminate until January 18, 1943, plaintiff is not entitled to demand a partition, and that the Court, in its discretion, should hold in abeyance a decree of partition until the expiration of said lease.
 

 “Such a contention is clearly untenable. Art. 1289, R.C.C., is sweeping in its scope. It says :
 
 “
 
 ‘No one can be compelled to hold property with another, unless the contrary has been agreed upon; any one has a right to demand the division of a thing held in common, by the action of partition.’
 

 “There are few exceptions to this rule, such as provided for by Art. 1301, R.C.C., wherein a time limit is fixed by a testator in disposing of his effects and the articles of our Code creating the right of usufruct in favor of a survivor. In the latter instance, however, it has been held that a partition in kind máy be affected by the co-owners subject, however, to the right of usufruct enjoyed by one of the co-owners.
 

 “The right to a partition being thus determined there remains the questions, (1), whether the partition should be made in kind or by licitation; (2), whether the lease held by defendant is still enforceable and its effect as opposed to the extinction of the usufruct previously enjoyed by the lessor; and, (3), the rentals, if any, due by defendant to plaintiff should the lease be declared abrogated.
 

 
 *388
 
 ' “Under the second question, plaintiff contends that the lease, made by Napoleon Young covering the interest in which he enjoyed a usufruct, ended when the usufruct expired.
 

 “The first question to be settled under this aontention is the termination of! Young’s usufruct. As previously stated, Young granted a lease covering his rights of usufruct for a period to expire January 18, 1943. It is shown that he died on November 6, 1938.
 

 “The law that governs such an issue is in Articles 555, 606, and 2730 of the Civil Code, viz:
 

 “‘555. The usufructuary may enjoy by himself or lease to another, or even sell or give away his right; but all the contracts or agreements which he makes in this respect, whatever duration he may have intended to give them, cease of right at the expiration of the usufruct.’
 

 “ ‘606. The right of the usufruct expires at the death of the usufructuary.’
 

 “ ‘2730. A lease made by one having a right of usufruct, ends when the right of usufruct ceases.
 

 “ ‘The lessee has no right to an indemnification from the heirs of the lessor, if the lessor has made known to him the title under which he possessed.’
 

 “The Supreme Court in the case of Sparks et al. v. Dan Cohen Co., Inc., 187 La. 830, 175 So. 590, 593, in interpreting the codal provisions, supra, said:
 

 “ ‘A lease made by an usufructuary, therefore, “ceases of right at the expiration of the usufruct,” whether the lessor informed the lessee, or failed to inform him, before or at the time of making the lease, that he, the lessor, was only the usufructuary, and not the owner, of the property. It is the right of the lessee to be indemnified by the heirs of the lessor, if the lessor is only the usufructuary and if he dies before the expiration of the term of the lease, that depends upon whether the lessor failed to make known to the lessee that he, the lessor, was not the owner but only the usufructuary of the property. * *
 
 *
 
 An usufructuary cannot, by failing to disclose to a lessee that he, the lessor, is not the owner but only the usufructuary of the property, deprive the owner of his right under the law which says that such a lease “ceases of right at the expiration of the usufruct.” ’
 

 “Plaintiff’s contention, therefore, that the lease ended at the expiration of the usufruct, is clearly sound in law, unless there be intervening circumstances which would give rise to a continuance of the lease as are the peculiar facts to be found in this case.
 

 “The children of Napoleon Young, lessor and usufructuary, as naked owners of a one-half interest in the lot in question, are seen to have sold all of their rights of ownership to plaintiff, this on January 7, 1936. The lease by Napoleon Young as owner and usufructuary was an authentic document and of record at the time of this purchase by plaintiff. Hence, plaintiff purchased the naked ownership burdened with the usufruct in favor of the said Napoleon Young. The record discloses that defend
 
 *389
 
 ant thereafter continued to pay Napoleon Young the rental called for by said lease, and this to the knowledge of plaintiff.
 

 “On June 2, 1938, we find an authentic document executed by Napoleon Young wherein he takes cognizance of the purchase by plaintiff of the one-half interest on which the former enjoyed a usufruct, and likewise taking cognizance of he having received a stipulated rental as usufructuary. We find the said Young therein declaring that by virtue of plaintiff’s purchase that he ‘does here and now waive any right of usufruct which he has upon the said undivided one-half interest of said property unto and in favor of the said Joseph S. Aucoin, his heirs and assigns, as fully as if he (Young) had appeared in the said original act of sale with his aforesaid children, and waived any and all rights which he had in favor of said purchaser. The appearer further stipulates that from this time oh, the said J. J. Greenwood, is hereby directed and authorized each month to pay unto the said Joseph S. Aucoin the rental due for the lease of said property.’ (Ex. D-18).
 

 “Immediately following the execution of this transfer, on June 15, 1938, we find the defendant notifying plaintiff by letter of the effects of this aforesaid transfer, in the following language, viz:
 

 “ ‘* * * you refer to the fact that unless Young waived his right to the usufruct of his children’s interest in the property, in writing, and authorized you to pay the rental due under the lease to me, you would continue to pay the rent in advance to Young.
 

 “ ‘This is exactly what Young did for : me in his agreement and waiver of June 2, 1938. He not only waives his right of usufruct in my favor for the undivided one half interest in the property but directs that you each month pay unto me the rental due by you for the use of this property.
 

 “ ‘You have a recorded lease, and I realize that I purchased the children’s one half interest in the property subject to the terms and conditions of your lease. Whatever rights you have under this lease I' have respected and will continue to do so as long as you do not violate the terms and conditions of the same.
 

 “ T now stand in the place of Napoleon Young with the right to collect one half of the stipulated rental due for this property in advance each month.’ (Ex. D 17 — E 9).
 

 “Plaintiff having primarily acquired the ownership of a one-half interest in the lot in question though then burdened with the usufruct, having thereafter received in his favor and for his benefit a waiver of the then existing usufruct with the right to collect rentals otherwise payable to the usufructuary, and having notified, in writing, the defendant in accordance with the language quoted, supra, I experienced no difficulty in deciding that he not only ratified and confirmed defendant’s then existing lease, in accordance with its terms and conditions, but likewise brought into being the relation of lessor and lessee in so far as he and defendant were concerned. Eyery positive expression contained in his notification to defendant reflects unmistakably his desire and his acceptance of the terms
 
 *390
 
 and conditions of the then existing lease in favor of defendant, more so in using the expression, T have respected and will continue to do so as long as you do not violate the terms and conditions of the same.’ Here was an outstanding and valid lease entitling the defendant to possession and enjoyment. The waiver and abandonment of the usufruct cannot be held to constitute an abrogation of the lease, more so for the reason that in the waiver and abandonment we find an express provision calling for the continued payment of the rentals to plaintiff as the recipient and beneficiary of the usufruct so waived. Plaintiff, cognizant of this valid outstanding lease and the privileges 'flowing therefrom, voluntarily accepted the position of lessor to-defendant in accordance with the terms and conditions of the lease. There is no contention that defendant has failed to comply with the obligations imposed on him by the lease nor does plaintiff contend that the rentals have not been paid in accordance therewith. On the contrary, it is shown that he has received, monthly, the rentals called for.
 

 “But in spite of this express confirmation and ratification, and plaintiff’s acceptance of the lease contract burdening the property in which he owned a one-half interest, he now contends that because the usufruct ceased at the death of the usufructuary, this latter contention being true, that the lease likewise expired. He fails, however, to take into consideration his conduct, his activities, and express declaration prior to the cessation of this usufruct wherein he, voluntarily, accepted the position of lessor to defendant in accordance with 'the then existing valid lease. Readily conceding that a' usufruct ceases • at the death of a usufructuary, plaintiff having accepted the benefits of the waiver of this usufruct five months prior to its legal cessation, and created for himself by his own actions and conduct the relation of lessor and lessee as between he and defendant, cannot now be heard to demand the abrogation of this lease which he himself gave a continued life. And to go further, at the death of Napoleon Young he no longer was usufructuary, having five months previously waived and abandoned it in favor of plaintiff, who then in turn confirmed and accepted the privileges and obligations flowing from the then existing lease.
 

 “In view of the foregoing reasons, • a partition being demandable as a matter of right, the ordering of this partition shall be done subject to the then existing lease in favor of defendant in accordance with its full tenor.
 

 “There remains for determination the method of effecting the partition. It is axiomatic that partitions in kind are favored in law. Each of the heirs or co-owners may demand in kind his share of the movables and immovables C.C., Art. 1337, and it is only when the property is indivisible by its nature or cannot be conveniently divided in kind that the judge is authorized to order a partition by licitation. C.C. Art. 1339.
 

 “Our Supreme Court has repeatedly and consistently held that in judicial partitions the judge must order-the property partitioned in kind unless it is proved,
 
 *391
 
 either that it is indivisible by its nature or that ‘a diminution of its value, or loss or inconvenience of one of the owners, would be the consequence of dividing it.’ C.C. Art. 1340, Succession of Miller v. Evans, 184 La. 933, 168 So. 106.
 

 “Our Courts in interpreting our Codal provisions on the subject of partitions have likewise required that lots of equal, or of nearly equal, value should be formed, and under Art. 1366 of the C.C. ‘When the lots are of unequal value, such inequality is compensated by means of a return of money, which the coheir, having a lot of more value than the other, pays to his coheirs.’ Kaffie v. Wilson, 130 La. 350, 57 So. 1001; Hoss v. Hardeman, 156 La. 371, 100 So. 532; Rayner v. Rayner, 171 La. 1050, 132 So. 784.
 

 “Having previously determined that the building and improvements located on the property in question belong to defendant with the right of removal, this under the express terms of the existing lease, such buildings and improvements cannot be considered in determining the method of partition. To effect the partition we must consider the property as a vacant lot, having a frontage of two hundred feet by a depth of one hundred and fifteen feet, plaintiff and defendant each owning an undivided one-half interest therein.
 

 “This lot of ground is located in the settlement of Amelia. It cannot be used for agricultural purposes its value being confined solely to its present use, that of a commercial nature. Its value as that of a commercial nature is made so by fronting on U. S. highway 90, and likewise for the residents of that small village, being somewhat of a trade center for that area. Unquestionably, the eastern end of the lot which fronts on both U. S. highway 90 and the shell road is of greater value than the western. The filling station, cafe, store and residence are located on the north eastern corner lying at the junction of said lots. Both litigants concede that fact.
 

 “The expert hired by the Court, and witnesses, both for plaintiff and defendant, concede that the property is divisible in kind, and that lots of equal value, or nearly so, can be formed, this by compensating in area the lot to be formed on the western end to that formed on the eastern. In the formation of these two lots it will be seen that sufficient area will be given fronting the highway 90 by an equal depth of one hundred and fifteen feet, and'that both lots can be advantageously used for commercial purposes, the sole use to which it can be dedicated. The lot in question is not indivisible by its nature and forming two lots will under no circumstances diminish its value or cause any loss or inconvenience to either of the owners.
 

 “There remains no necessity to inquiry into the merits of the plea of prescription urged by defendant in view of the position taken by the Court relative to the buildings and improvements located on said property.”
 

 Counsel for the defendant has argued in. this court, both orally and in brief, that the trial judge erred when he ordered that the notary and experts appointed
 
 *392
 
 by him divide the property into two lots of equal value, it being counsel’s contention ■that it was the duty of the trial judge to ■direct just where the division lines were to be placed and that such duty could not be delegated to the notary and experts appointed by him. In support of this contention, the cases of Cameron v. Lane, 36 La. Ann. 716, and Blanchard v. Heirs of Blanchard, 7 La.Ann. 529, are cited.
 

 The cited cases are not authority for counsel’s contention. To the contrary, they support the action' of the trial judge. It is fundamental in our basic law that no one can be compelled to hold property in indivisión with another. For this reason, each of the co-owners is given the absolute right “ * * * unless the contrary has been agreed upon, * * * to demand the division of a thing held in common, by the action of partition.” Article 1289 of the Revised Civil Code. See, also, Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558, and the authorities therein cited. After issue has been joined in the partition suit, it becomes the mandatory duty of the trial judge to whom the case is submitted to “decree the partition, direct the manner in which it shall be made, and refer the parties
 
 to a notary whom he shall appoint to make the partition.”
 
 (Italics ours.) Article 1027 of the Code of Practice. See, also, Article 1336 of the Revised Civil Code. But the partition made .by the notary, assisted by such experts as the trial judge may appoint, is not binding on the parties. It may be opposed by any interested party and it may either be modified or disregarded by the trial judge. Articles 1029 and 1030 of the Code of Practice. The trial judge may even resubmit the matter to the notary formerly appointed by him to make the partition, or to another notary whom he may appoint, in order that it may be given further consideration and action. Article 1031 of the Code of Practice. The reason for this is obvious. It is only in rare cases that the trial judge has personal knowledge of the land sought to be partitioned, and it is impractical to place upon him the duty of personally going over the land. Consequently, he is directed to refer the matter to a notary appointed by him. The notary makes a formal report. He may be assisted in the making of this report by such experts as are appointed by the judge. This report has a prima facie correctness and, as a general rule, the trial judge will base his decision thereon. But he is not bound to do so. Any interested party has the right to oppose the homologation of the report and may, by competent evidence, satisfy the court that the report is prejudicial and erroneous and, if followed, will result in injustice to one or more of the parties.
 

 Plaintiff is also complaining that the judgment of the lower court should be amended to award him rent on the property in controversy at the rate of $5 a month from June 1 to November 6, 1938, at which time Napoleon Young died, and at the rate of $15 or $17.50 a month from November 6, 1938, until he receives payment, as a quantum meruit, all with interest at the rate of 5% per annum, and that he be relieved of paying half the costs taxed by the trial judge.
 

 
 *393
 
 The trial judge having concluded that Greenwood’s lease was in full force and effect, by virtue of the plaintiff’s acquiescence therein, and the plaintiff having admitted the receipt of the checks sent him by Greenwood under registered mail in the amount of $5 for each month beginning with June 15, 1938, and ending with the month of May, 1940, when this suit was tried, plaintiff was not entitled to judgment for rent. The trial judge’s conclusion that the plaintiff was paid is correct. The fact that the plaintiff, for reasons best known to to himself, did not cash these checks over the years, does not alter the issues of this case as here decided. Whatever rights the plaintiff may have for the non-payment of the checks sent him by the defendant can only arise if and when they are presented for payment and are dishonored.
 

 Plaintiff’s contention that the defendant, having seriously resisted the partition, should be taxed with costs under the doctrine announced in the case of Jacobs v. Jacobs, 126 La. 365, 366, 52 So. 543, is equally without merit, because in this case the defendant had a right to resist the demands made by the plaintiff in his petition, • as will be found reflected in the opinion of the trial judge. In our opinion, the ruling of the trial judge taxing the costs of the proceedings equally between the plaintiff and the defendant does justice to both parties.
 

 For the reasons assigned, the judgment of the lower court is affirmed, all costs of this appeal to be borne by the plaintiff and the defendant equally.
 

 O’NIELL, C. J., does not take part.