Plaintiffs, Mrs. Josie Watson Junkin, Mrs. Lula Watson Burley and Mrs. Lena Watson Whitley, three of the children of the marriage of their father and mother, Willis John Watson and Josephine Bennefield, both deceased, appealed from judgment rejecting their demand for a partition by licitation, but ordering one in kind, of the following described property situated in Catahoula Parish, acquired by Willis John Watson during said marriage, to-wit:
Tract containing 414.51 acres in a body in Sections 11, 12 and 14, Township 8 North, Range 6 East, fronting on the Ouachita River approximately 3/4 of a mile, particularly described in the petition;
Fractional South 1/2 of NE 1/4, Section 1, Township 8 North, Range 6 East, containing 36.00 acres, which does not adjoin Tract No. 1.
There were four other children of the marriage of Willis John Watson and Josephine Bennefield, to-wit: Annie, who married Will Arnold; Mary, who married Sid Mallory; Sallie, who married Lawrence Shaw, and Ben.
Willis John Watson died intestate on March 14, 1911; Sallie Watson Shaw died intestate and without issue on October 28, 1918; and Josephine Bennefield Watson died intestate on January 24, 1929.
Prior to his marriage to Josephine Bennefield, Willis John Watson contracted a marriage with another woman whose name is not disclosed by the record. She died prior to the second marriage. As issue of the first marriage there was one child, named Nora, who married a man by the name of Hugh Whitehead. They had three children, to-wit: James, Hugh and Watson Whitehead. James Whitehead died intestate leaving as his sole heir one daughter, *Page 582 
Nora Lee. She married Thomas Carraway and now resides in the City of Vicksburg, Mississippi. She is the sole defendant in this case.
It is alleged by plaintiffs and admitted by defendant that Mrs. Lula Watson Burley acquired by purchase the interest of the following heirs in said lands, to-wit: Mrs. Annie Watson Arnold, Mrs. Mary Watson Mallory, Ben Watson and Hugh Whitehead. It is also alleged and admitted that she likewise acquired the interest of James Whitehead therein but obviously this is erroneous as his sole heir is the defendant, whereas Watson Whitehead is not impleaded. Evidently the interest of Watson Whitehead was acquired by Mrs. Burley, not that of James Whitehead.
A curator ad hoc was appointed by the court to represent Mrs. Carraway and he answered as her attorney. All allegations of fact of the petition are admitted save those to the effect that the property, is indivisible in kind without inconvenience and/or depreciation in value. She avers that the lands are divisible in kind and prays that plaintiffs' demand be rejected at their cost.
In a supplemental petition plaintiffs alleged that the 36 acre tract in Section 1 had been leased for minerals, etc., by all co-owners therein to the Sinclair Prairie Oil Company and that the other tracts in Sections 11, 12 and 14 had been likewise leased to Carter Oil Company. These two corporations were made parties to the suit and they answered. Each prays that in event there should be a partition of the land by any method authorized by law, its rights as lease holder be not affected thereby. It is conceded that under Article 741 of the Civil Code, as amended by Act No. 336 of 1940, the interest and rights of said lease holders cannot be unfavorably affected by a partition of any sort of the lands described. Therefore, they have made no appearance here and really have no serious interest in the outcome of the demand for a partition.
Defendant introduced no evidence whatever on trial of the case, and that adduced on plaintiffs' behalf was not reduced to writing. Prior to taking appeal, counsel for both sides signed stipulations containing an epitome of the testimony introduced and in which it is admitted that defendant's interest in the land is 59/2688 or 9.90 acres. It is further admitted that the value of all said lands is less than $2,000.
The lower court gave written reasons for judgment.
When Willis John Watson died his eight children inherited his community one-half interest in said lands, or 1/16 each. The other one-half interest therein, of course, was the property of his surviving widow.
At the death of Mrs. Shaw her mother inherited 1/4 of her undivided 1/16 interest in the land and her brother, five sisters of the whole blood and her half sister or her heirs, inherited 3/4 of her interest. The interest of said half sister or her heirs thus inherited was 3/896 of the whole, being 1/7 of 1/2 of 3/4 of 1/16.
When Mrs. Josephine Watson died, her 1/2 interest as surviving widow and 1/64 interest inherited from her daughter, Sallie, devolved upon her six surviving children.
At the present time Mrs. Burley's interest in the lands is an undivided 3584/5376 and that of Mrs. Junkin and Mrs. Whitley 837/5376 each. To express these interests in acres, Mrs. Burley owns 300.56, Mrs. Junkin and Mrs. Whitley each 70.14. Should experts form forty-five (45) lots in order to effectuate the partition, Mrs. Burley would be entitled to draw thirty (30) of them; Mrs. Junkin and Mrs. Whitley seven (7) each and defendant one (1).
Counsel for plaintiffs argue that to effectuate a partition in kind of the lands it will be necessary to subdivide the tracts into 5376 lots. We do not think this position sound. As defendant's interest is practically 1/45 of the whole, should the lands for partition purposes be divided into lots of equal acreage, no greater number than 45 would be necessary. However, since it is shown that some of the land is worth per acre more than other parts of it, it is not imperative that each lot have the same acreage. Value, rather than acreage, should be the controlling factor to guide experts in their efforts to delineate the lots on the basis of fairness and equity.
There is no testimony whatever in the record, by experts or other witnesses, to support the contention that the land cannot be divided in kind without "diminution of its value or loss or inconvenience of some of the owners." The only controverted issue tendered was whether the partition should be made in kind or by licitation. Witnesses did testify to the general character and condition of the land but beyond this the record is barren. *Page 583 
All property, except that sort which from its nature is indivisible, is presumed to be divisible in kind. Civil Code, Articles 1337, 1339 and 1340. The law favors a partition in kind as against one by licitation. Raceland Bank Trust Co. v. Toups,173 La. 742, 138 So. 652; Succession of Miller v. Evans et al.,184 La. 933, 168 So. 106; Aucoin v. Greenwood, 199 La. 764,7 So.2d 50.
The facts of the present case are quite similar to those in Trahan v. Wilson, 130 La. 541-544, 58 So. 178, 179. Plaintiff in that case owned 19/160 interest in a tract of 140 acres of improved land. The lower court, without testimony to support its action, ordered a partition by licitation. Discussing this issue, the Supreme Court said: "The question of the indivisibility vel non of the property in kind does not seem to have attracted any attention in the lower court. No special issue was made of it in the answer; and the defendant seems to be urging it for the first time in this court. We mention this in justice to the learned trial judge, for we find ourselves constrained to reverse the judgment, in so far as it orders a sale of the property; there being no evidence, either by experts or witnesses, of its indivisibility in kind, and the law and settled jurisprudence requiring that such proof he administered before a sale can be ordered. Gernon v. Bestick, 15 La.Ann. 697; Keller v. Judson, 18 La.Ann. 282."
The lower court, in passing on the issue here discussed, in written reasons for judgment, said:
"The question of value of the whole is of little or no aid in determining the proper method of partition. The Court is required to order a partition in kind, unless such would be an injury to the value of the whole, or the physical division impractical or impossible. On this question, the Court is furnished with no evidence other than the above related physical facts. This being true, the Court knows of no reason why lands, such as that here in question could not be divided as required without injury to the whole or that it would not be physically possible and practical. The defendant is the only owner of a small fractional portion and is the only one that could complain of a diminition in value of her portion by reason of its smallness. This she does not do. To the contrary, she urges a division in kind and has made known to the Court her offer and willingness to accept as her portion any allotted acreage of proportional value, so situated as not to cause a loss or inconvenience to any co-owner. * * *
"There is nothing before this Court that would tend to show that the consequence of a division in kind here would be a diminition in value, loss or inconvenience to any one of the co-owners. It is true that the expense of dividing these lands into some forty-five equal lots will possibly be more than the value of the least portion. But the same may be said of the expense of public sale by licitation. It is regrettable that these seemingly unnecessary expenses could not be avoided by an amicable agreement among these co-owners, particularly so, in view of the defendant's expressed willingness, as above related."
We are of the opinion, in view of the testimony before it, that the lower court correctly ruled on the issue of the kind of partition which should be ordered, and, for this reason and others herein assigned, the judgment appealed from is affirmed. Plaintiffs are cast for costs of appeal.