FRED W. JONES, Jr., Judge.
Defendant appeals a judgment rendered in an eviction proceeding ordering him to *1282 vacate and deliver possession to plaintiff of certain property situated in Red River Parish. We affirm.
The record reveals that the community existing between one J. G. McGinty and Ruby Giddens McGinty acquired several hundred acres of land in Red River Parish. Upon the death of McGinty some time prior to 1975, an undivided one-half interest in this property was vested in his widow and the other one-half interest in his two children, Mrs. Iva June McGinty Nelson and Mrs. Ruby McGinty Shrell, subject to the usufruct of their mother.
In March 1975 Mrs. McGinty donated to her two children, her undivided interest in this property, but expressly reserved the usufruct thereof. In April 1975 the two daughters executed an act of partition under which each acquired the sole naked ownership of designated portions of the property.
On February 10, 1978 Mrs. McGinty executed in favor of Earl C. Hildebrand a lease for the “hunting of wild game” for a primary term of five years at a rental of $400 per year covering that property of which Mrs. Nelson had the naked ownership.[1] The lessee was further granted an option to renew the lease for an additional five years at an annual rental of $475. The fact that Mrs. McGinty was only the usufructuary of the leased property was not mentioned in the instrument.
Hildebrand exercised his rights under the lease by placing a school bus on the property for use as a camphouse; connecting electrical lines to the bus; building deer stands; clearing underbrush for access to the camp-house and the stands; fencing some unfenced portions of the property; and installing two metal gates.
Mrs. McGinty died in July 1979. The record indicates that Hildebrand, who lived in Caddo Parish, continued to exercise hunting privileges on the property covered by the lease. On February 11, 1980 Hildebrand transmitted to Mrs. Nelson a check in the amount of $400, made payable to “Imogene Nelson”, as annual rental for the “deer lease”. Mrs. Nelson accepted the check and deposited it in her bank account.
By letter dated January 23, 1981 Mrs. Nelson's attorney advised Hildebrand that his lease from the usufructuary expired upon her death and notified him to vacate the property. Hildebrand’s 1981 rental check was returned with the letter. Subsequently, by letter dated February 19, 1981 Mrs. Nelson’s attorney gave Hildebrand five days notice to vacate the property or, alternatively, face eviction proceedings. Then, by letter dated March 16, 1981 Mrs. Nelson’s attorney advised Hildebrand’s attorney that eviction proceedings would be instituted if Hildebrand failed to vacate the property within ten days.
This eviction suit was filed on April 9, 1981, alleging that the lease had terminated with the death of the usufructuary. It was further asserted that Hildebrand had violated the conditions of the lease by failing to fence all unfenced portions of the lease premises.
On the day of the trial of the summary eviction proceeding, Hildebrand filed an answer to the rule and reconvened for the value of improvements made to the leased property and for loss of profits anticipated from subleasing (in the event of eviction). The trial judge ruled that trial would proceed as to the eviction demand only, reserving to Hildebrand the right to try the re-conventional demand later.
In oral reasons for judgment the trial judge found that the lease was terminated by the death of the usufructuary; that Mrs. Nelson’s acceptance of the rental check in 1980 “was done through error and was not intended for ratification of the lease”; and that defendant’s failure to fence all of the unfenced portions of the leased property *1283 breached the lease (apparently an alternative finding in the event that the lease was still in existence).
Appellant contends that the trial judge erred in failing to find that Mrs. Nelson’s acceptance of the rental check constituted a ratification of the lease executed by her mother and in concluding that appellant had breached the lease.
Civil Code articles dealing with the authority of a usufructuary to lease property burdened by the usufruct and the legal effect of that type of lease are:
Art. 567 (formerly Art. 555).
The usufructuary may lease, alienate, or encumber his right. All such contracts cease of right at the end of the usufruct.
If the usufructuary leases, alienates, or encumbers his right, he is responsible for the abuse that the person with whom he has contracted makes of the property. Art. 607 (formerly Art. 606).
The right of usufruct expires upon the death of the usufructuary.
Art. 2730.
A lease made by one having a right of usufruct, ends when the right of usufruct ceases.
The lessee has no right to an indemnification from the heirs of the lessor, if the lessor has made known to him the title under which he possessed.
Finding that a lease had expired upon the death of the lessor-usufructuary, the court in Sparks v. Dan Cohen Co., 187 La. 830, 175 So. 590 (1937) noted:
“A lease made by an usufructuary, therefore, “ceases of right at the expiration of the usufruct,” whether the lessor informed the lessee, or failed to inform him, before or at the time of making the lease, that he, the lessor, was only the usufructuary, and not the owner, of the property. It is the right of the lessee to be indemnified by the heirs of the lessor, if the lessor is only the usufructuary and if he dies before the expiration of the term of the lease, that depends upon whether the lessor failed to make known to the lessee that he, the lessor, was not the owner but only the usufructuary of the property. That is the precise language and meaning of. article 2730 of the Civil Code. An usufructuary cannot, by failing to disclose to a lessee that he, the lessor, is not the owner but only the usu-fructuary of the property, deprive the owner of his right under the law which says that such a lease “ceases of right at the expiration of the usufruct.”
On the other hand, in Aucoin v. Greenwood, 199 La. 764, 7 So.2d 50 (1942), the court found that the naked owner had ratified the lease by the usufructuary. Since this appears to be the only reported Louisiana case addressing this specific question, the particular facts of that case merit close scrutiny. In 1929 the owner (Young) of an undivided one-half interest in a lot, having a usufruct on the other undivided one-half interest, executed a lease which was subsequently assigned to Greenwood. In 1935 Greenwood purchased Young’s undivided one-half interest. In 1936 Aucoin acquired the other undivided one-half interest, subject to Young’s usufruct. In June 1938 Young executed a notarial act waiving and abandoning his usufruct in favor of’Aucoin. This instrument included a clause directing payment of lease rentals by Greenwood to Aucoin. Aucoin immediately notified the lessee Greenwood of the effect of this usu-fruct waiver by letter containing this language:
“ ‘You have a recorded lease, and I realize that I purchased the children’s one-half interest in the property subject to the terms and conditions of your lease. Whatever, rights you have under this lease I have respected and will continue to do so as long as you do not violate the terms and conditions of the same.
“ T now stand in the place of Napoleon Young with the right to collect one half of the stipulated rental due for this property in advance each month.’ ”
Young died in November 1938.
Rejecting Aucoin’s argument that the lease terminated with the death of the usu-fructuary, the court held:
*1284 “.. . He fails, however, to take into consideration his conduct, his activities, and express declaration prior to the cessation of this usufruct wherein he, voluntarily, accepted the position of lessor to defendant in accordance with the then existing valid lease. Readily conceding that a usufruct ceases at the death of a usufructuary, plaintiff having accepted the benefits of the waiver of this usu-fruct five months prior to its legal cessation, and created for himself by his own actions and conduct the relation of lessor and lessee as between he and defendant, cannot now be heard to demand the abrogation of this lease which he himself gave a continued life. And to go further, at the death of Napoleon Young he no longer was usufructuary, having five months previously waived and abandoned it in favor of plaintiff, who then in turn confirmed and accepted the privileges and obligations flowing from the then existing lease.”
Here, unlike Aucoin, there is no contention that Mrs. Nelson did anything prior to extinction of the usufruct by the death of the usufructuary to ratify the lease. Under the plain language of the pertinent codal articles, we must conclude that the lease by Mrs. McGinty in favor of Hildebrand terminated in July 1979 upon the death of the usufructuary. The pivotal question in this case is whether, after the death of her mother, Mrs. Nelson by any means adopted the terms and conditions of that lease so as to assume the relation of lessor of her Red River Parish property to Hildebrand.
First, again unlike Aucoin, there was no express statement in writing by Mrs. Nelson expressing an intent to adopt her mother’s lease to Hildebrand. Second, as to an oral agreement, appellant alludes to a conversation between Mrs. Nelson and Hildebrand in January 1981 dealing with the lease. However, the evidence concerning the substance of this conversation is vague and inconclusive. Consequently, in the final analysis, appellant’s principal reliance for proof of continued existence of his lease is upon Mrs. Nelson’s acceptance of the rental check from him in February 1980.
We note that, because of ambiguity in the lease relating to this annual payment, it is unclear whether the check in question was for the past year’s rent or for the next year’s rent. Be that as it may, we do not find that the mere acceptance of rent by the property owner after the termination of a lease by the death of the lessor-usufructuary, absent other circumstances manifesting a clear intent to adopt the pri- or lease, constitutes an adoption of the lease by the property owner. Once the lease terminated with the death of the lessor-usu-fructuary, to retain possession of the lease premises for hunting purposes Hildebrand had the burden of proving that, either expressly or impliedly, a contract of lease was established between Mrs. Nelson and him. He attempted to do this by proving that Mrs. Nelson had adopted the lease executed by her mother. We agree with the trial judge that appellant failed to discharge his burden of proof. Therefore, the trial judge correctly found that the lease terminated upon the death of Mrs. McGinty; was not subsequently adopted by Mrs. Nelson; and Mrs. Nelson was entitled to have Hildebrand evicted.
Having determined that no contract of lease existed between Mrs. Nelson and Hildebrand, we find it unnecessary to consider whether that lease should be dissolved because of its breach by the lessee Hildebrand. As previously noted, Hildebrand retains the right to pursue his claims under the reconventional demand.
For the reasons set forth, the judgment of the district court is affirmed, at appellant’s cost.

. Although Hildebrand filed an exception of nonjoinder of an indispensable party plaintiff, contending that Mrs. Shrell also owned some of the property covered by the lease, the trial judge made the fact-finding, based upon the only evidence in the record on this point, that the lease covered only land owned by Mrs. Nelson. Since this finding was not clearly wrong, we conclude that the trial judge properly overruled the exception of nonjoinder.