(72 South. 718)

No. 20416.

COCHRAN et al. v. GULF REFINING CO. OF LOUISIANA.

(June 30, 1916. Rehearing Denied Oct. 16, 1916.)

*(Syllabus by the Court.)*

1. DESCENT AND DISTRIBUTION ☞119(2) — MINES AND MINERALS ☞66—SUCCESSION—ACCEPTANCE OF SUCCESSION—EFFECT—MINERAL LEASE—RESCISSION.

The grantor of a mineral lease died, leaving a widow in community and four daughters of age. The widow, being the owner of one half and usufructuary of the other half of the land subject to the lease, signed an instrument, purporting to extend the term of the lease, for which she received a cash consideration from the grantee. She died soon after, and her four daughters accepted her succession unconditionally and without the benefit of inventory. They made an extrajudicial partition of the land subject to the lease, whereby each heir became the sole owner of a fourth in area of the land; and they permitted the grantee to drill three producing wells within the extended term of the lease. Thereafter two of the heirs, one of whom had sold to a third party a portion of the land allotted to her in the partition, sued the grantee to annul the lease in so far as it affected the lands owned by them. *Held*: (1) That the plaintiffs, by accepting the succession of their mother unconditionally and without the benefit of inventory, assumed her obligation to respect the extension of the term of the lease. (2) That, as the lease was indivisible, the plaintiffs alone could not maintain the action of nullity after disposing of a part of the land subject to the lease.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 215–220, 224, 435–437; Dec. Dig. ☞119(2); Mines and Minerals, Cent. Dig. §§ 185, 186; Dec. Dig. ☞66.]

2. MINES AND MINERALS ☞58—CONTRACTS—RIGHT TO DRILL—MUTUALITY.

A contract, granting the right to drill for minerals within a limited period of time, for an adequate consideration paid by the grantee, is not null merely because the grantee is not obliged to do anything more.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169; Dec. Dig. ☞58.]

3. MINES AND MINERALS ☞66 — MINERAL LEASES—RIGHT TO CANCELLATION.

When the grantee of a mineral lease for a limited term has paid an adequate consideration in cash and has complied with all of the obligations expressly imposed upon him, the grantor is not entitled to a cancellation of the

lease for the failure of the grantee to do more than the contract expressly required of him.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 185, 186; Dec. Dig. ☞66.]

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Action by Mrs. Lillian B. Cochran and others against the Gulf Refining Company of Louisiana. From a judgment dismissing the action, plaintiffs appeal. Affirmed.

G. H. Holder, of Shreveport, for appellants. D. Edward Greer, of Houston, Tex., and Thigpen & Herold, of Shreveport (F. C. Proctor, of Houston, Tex., of counsel), for appellee.

O'NIELL, J. This is an action to annul a mineral lease and for $10,000, damages for the alleged failure on the part of the lessee to develop the land.

The lease was made on the 22d of December, 1906, by the plaintiffs' father, John H. Harris, to the J. M. Guffy Petroleum Company of Louisiana. The grant was made of all the oil, gas, and other minerals in and under a certain tract of land containing 376.-50 acres, and the exclusive right to drill and operate thereon for oil or gas, together with the right of way to lay pipe lines, to convey water, oil, or gas from the premises, with the right to operate any wells the grantee might bore, and to have such other privileges as were reasonably requisite for conducting the operations. The grantee was given the right to remove from the premises at any time any and all property that might be placed thereon by the grantee; was to begin drilling a well for oil or gas on the premises within six months from the date of the contract, but had the right to extend the time in which to begin drilling for successive periods of six months each, dating from the expiration of the first six months from the date of the contract, by depositing to the credit of the grantor in a designated bank the sum

of $188.25; that is, 50 cents an acre for each delay of six months. It was stipulated that if the grantee should fail to make the deposit on or before the first day of any of the six-month terms of extension, the lease would thereby terminate; and that the successive periods of six months in which the right to begin drilling a well for oil or gas might be extended should not exceed two years from the date of the contract, and that if the grantee should not begin drilling within two years from the date of the contract, the lease would terminate. It was also stipulated that the grantee would not be required to make any further payment of money if the grantee should begin drilling a well on the premises within the time stipulated and prosecute the work with reasonable diligence; and that, if the grantee commenced the drilling of a well within the time stipulated, it should have the right to make as many successive attempts to find oil as it might desire. As a consideration for the grant, the grantor was to receive a royalty of one-eighth of all the oil saved from that produced, and $100 a year for each gas well, the product of which should be marketed or used off of the premises. The first payment of royalty was to mature 60 days after the well should be turned into a pipe line, and subsequent payments were to be made annually thereafter. It was also stipulated that the grantee should pay the grantor a reasonable royalty for any other minerals than oil or gas that might be found in paying quantities by the grantee; that if oil or gas or other minerals should be found in paying quantities, the grantee would have the right to hold the lease as long as such oil or gas or other minerals might be produced in paying quantities; and, in this event, the grantee had the right to surrender the lease, and to remove from the premises any material placed thereon by the grantee, on paying to the grantor $100. All of the terms and con-

ditions of the grant were to extend to the heirs, executors, legal representatives, successors, and assigns of the respective parties thereto. The grantee paid $188.25 as a cash consideration for the lease, the receipt of which was acknowledged in the contract, with the declaration that the payment was received in full satisfaction of any and every right thereby granted, including the right to extend the privilege of exploring the land.

Within the six months ending on the 22d of June, 1907, the grantee, not having commenced to drill a well, paid the grantor $188.25, and the latter extended the lease six months from that date; within which time, not having commenced operations, the grantee made another payment of $188.25, and the lease was extended for another term of six months; within which time, that is, before the 22d of June, 1908, not having commenced operations, the grantee again paid $188.25 to the grantor, and the latter extended the term within which the grantee might begin drilling a well to the 22d of December, 1908. On the 21st of December, 1908, that is, the day before the lease would have expired, the grantor signed an authentic act, extending the lease six months longer; that is, to the 21st of June, 1909, for which extension the grantee paid $500 in cash.

John H. Harris died before the 21st of June, 1909, leaving a widow in community, Mrs. Lou Harris, and four daughters, the only issue of their marriage. The land subject to the lease, being community property, at the death of John H. Harris, his widow, Mrs. Lou Harris, owned one undivided half of it, and possessed the other undivided half in usufruct, all subject to the lease.

In consideration of the payment to her of $300 in cash by the grantee, on the 16th of July, 1909, Mrs. Lou Harris, being the owner of an undivided half of the land and possessing the other undivided half in usufruct, signed an instrument, purporting to extend the delay within which the grantee might begin the drilling of a well to the 21st of June, 1910. And, in consideration of a second payment to her of $300 in cash by the grantee, on the 5th of August, 1910, Mrs. Harris signed an instrument purporting to extend the delay within which the grantee might begin drilling a well to the 21st of June, 1911; and on that date, in consideration of the payment to her of $500 in cash by the grantee, she signed an instrument, purporting to extend the delay within which the grantee might begin drilling a well an additional term of one year; that is, to the 21st of June, 1912.

The grantee commenced drilling two wells before the 21st of June, 1912, both of which produced gas in paying quantities. In the meantime, that is, within a month after the last extension of the lease was signed by Mrs. Harris, she died. The two plaintiffs are daughters of Mrs. Lou Harris, issue of her marriage to John H. Harris. They and their two sisters, heirs of Mrs. Lou Harris, accepted her succession unconditionally and without the benefit of inventory, and made an extrajudicial partition of the land affected by this mineral lease, whereby each of the plaintiffs became the sole owner of a tract of 75 acres. It appears that all but 300 acres of the land had been disposed of by John H. Harris. Mrs. Parrott, one of the plaintiffs, sold to one William Claiborne a tract of 6 acres of the 75 acres allotted to her in the partition.

One of the producing gas wells that the grantee commenced drilling before the extended lease expired was drilled on the tract allotted to the plaintiff Mrs. Lillie B. Cochran in the act of partition, and the other was drilled on the tract allotted to Mrs. Minnie Barr, a sister of the plaintiffs. It appears that a third producing gas well was drilled on the 6-acre tract sold by Mrs. Parrott to William Claiborne. The grantee paid the

royalty of $100 a year to William Claiborne for the gas well drilled on his land, and deposited the $100 due for the gas well drilled on the land of Mrs. Cochran in bank, to her credit, in accordance with the contract.

This suit was filed in December, 1912, by Mrs. Lillie B. Cochran and Mrs. Mattie C. Parrott, two of the four daughters of John H. Harris. They admit and allege in their petition that, soon after the death of their mother, they and their two sisters, being the only heirs of Mrs. Lou Harris, accepted her succession and partitioned the remaining 300 acres of the land affected by the lease, so that each of the plaintiffs became the sole owner of a tract of 75 acres. They allege that the contract of lease was null from the beginning, for the following reasons: (1) Because there was no mutuality of obligations, the grantee not being obligated to do anything; (2) because the grantee did not sign the contract; (3) because the contract contained the potestative condition that the grantee might terminate the lease at any time by paying $100, which was an inadequate consideration for that right; and (4) that the provision for extending the lease by the payment of $188.25 for each successive period of six months was inconsistent with, and was annulled by, the subsequent acknowledgment that the cash payment of $188.25 was in full satisfaction of any and every right granted, including the right to extend, the privilege of exploring the land. The plaintiffs contend, in the alternative, that, if the court should hold that the contract was originally valid, it was terminated at the death of Mrs. Lou Harris, as to the undivided half interest which her heirs had inherited from their father, because, as to the undivided half interest belonging to the succession of John H. Harris, his widow had no legal right or authority to extend the lease beyond the term of the extension granted by him, which expired on the 21st of June, 1909.

They contend, in the alternative, that the grantee did not comply with the obligation to commence drilling a well within the last term of extension granted by Mrs. Lou Harris, and that the lease terminated as to the undivided half of the land belonging to her succession on the 21st of June, 1912. They allege, again in the alternative, that, if the lease was valid, it was forfeited by the failure of the grantee to develop the land, that being the principal consideration of the lease; that the drilling of three gas wells, without any attempt to get oil, was not a reasonable compliance with the obligation of the grantee to explore the land for oil and gas; and, in this connection, they allege that one of them, Mrs. Lillie B. Cochran, receives only $100 a year for the gas well on her tract of 75 acres, and that Mrs. Mattie C. Parrott is collecting nothing for her tract of 69 acres. They allege, finally, that they have suffered damages in the sum of $10,000 by the defendant's failure to develop the land.

The defendant filed an exception or plea to the jurisdiction of the district court ratione materiæ, as to the demand for damages, because the suit was not brought at the domicile of the defendant. The exception was maintained, and the suit for damages was dismissed.

In answer to the action of nullity, the defendant alleged that the lease was in full force and effect to the 21st of June, 1912, before which date the defendant commenced drilling the two wells which produced gas in paying quantities, and that the royalties were paid to the heirs and assigns of John H. Harris and Mrs. Lou Harris. They alleged that Mrs. Lou Harris, as owner of one half and usufructuary of the other half of the land subject to the lease, had authority to extend the term of the lease to the 21st of June, 1912, and that, whether she had or had not that authority, the plaintiffs were estopped and prevented from denying her

authority to grant the extension by accepting her succession unconditionally, and thereby assuming her obligations as to the property inherited by them. The defendant denied all of the plaintiffs' contentions as to the nullity of the contract; alleged that the cash consideration paid originally and the considerations paid for the extensions of the lease were adequate and substantial considerations for the rights acquired, and that the drilling of the wells which produced gas in paying quantities, under the terms of the contract, kept and continued the lease in full force and effect.

The case was tried on the issues set forth above; and, following the decision first rendered by this court in the case of Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 701, 64 South. 684, judgment was rendered in favor of the plaintiffs, annulling the lease. The defendant applied for a new trial; and, pending the application, this court granted a rehearing in the case of Caddo Oil & Mining Co. v. Producers' Oil Co., whereupon the district judge granted a new trial in the present case, and, following the decision rendered by this court on rehearing in the case of Caddo Oil & Mining Co. v. Producers' Oil Co., the district court reversed the judgment in the present case, and rejected the plaintiffs' demands. The plaintiffs have appealed.

## Opinion.

[1] The contract of lease in question was in full force and effect when John H. Harris died, and the land, subject to the lease, passed to his widow and heirs, the half interest of the heirs being subject to the usufruct in favor of their mother. Pretermitting the question whether the widow, as owner of one half of the land and usufructuary of the other half, could bind the co-owners by her contract extending the term of the lease, she bound herself by that contract; and, by accepting her succession unconditionally and partitioning the land that was subject to the lease which she was bound to respect, her heirs assumed her obligations with respect to the land, and were thereby bound to recognize the contract of lease. See R. C. C. 1013.

In the case of Smith v. Elliot, 9 Rob. 3, where the plaintiff sued to recover an interest in a tract of land which his ancestor had sold to the defendant, it was held that, by accepting his share of her succession unconditionally, the plaintiff had bound himself to warrant the title which she had conveyed to the defendant; that the obligation of warranty was indivisible in so far as it prevented one of several heirs from questioning the title conveyed by an ancestor; that the plaintiff could not take advantage of an error of law by which he had given effect to an invalid title; and that his acts had made the title of the defendant as valid as if the plaintiff had been the vendor. This doctrine in the civil law is expressed in the maxim: "Quem de evictione tenet actio, eundum agentem repellit exceptio." By their acceptance of the succession of their mother, unconditionally and without the benefit of inventory, the plaintiffs assumed her obligations with regard to the land which they received and partitioned among themselves and the coheirs. They acquired no greater right than their mother had with respect to the land of which they inherited an undivided half from her; and she was bound to respect her contract extending the term of the lease on the entire tract. Hence the contract, if originally valid, was in full force and effect when the two gas wells were drilled; and the question of validity or nullity of the contract from the beginning is to be determined as if the original grantor were the plaintiff in this case.

[2] The grantor received $1,100, and his widow received $1,253, for the privilege of commencing to drill for oil or gas at any

time before the 21st of June, 1912. There is no reason of law or fact to justify the plaintiffs' contention that the sum of $2,353, paid by the defendant for the privilege of drilling wells on the land in contest up to the 21st of June, 1912, was not an adequate consideration for that privilege. Hence there is no merit in the plaintiffs' contention that the contract was originally, or is now, a unilateral one.

The potestative conditions in the contract were eliminated by the defendant's beginning, within the term of the contract, the drilling of two wells that produced gas in paying quantities. See Saunders v. Busch-Everett Co., 138 La. 1049, 71 South. 153; Murray v. Barnhart, 117 La. 1023, 42 South. 489; Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 South. 754; Hudspeth v. Producers' Oil Co., 134 La. 1013, 64 South. 891; Caddo Oil & Mining Co. v. Producers' Oil Co., 134 La. 701, 64 South. 684; McClendon v. Busch-Everett Co., 138 La. 722, 70 South. 781.

[3] As to the plaintiffs' contention that the grantee has failed to develop the land to the extent contemplated by the contract, and has thereby violated the contract of lease, it was held in the case last cited (McClendon v. Busch-Everett Co.) that the grantor of a mineral lease is not entitled to a cancellation of the contract for the violation of an implied obligation on the part of the grantee, when the latter has performed all the obligations expressly imposed upon him by the contract. Aside from the doctrine announced in that case, the evidence before us does not support the allegation that the defendant did not comply with the implied obligation to develop the land to a reasonable extent. The two gas wells were drilled in compliance with the extension of the contract; and this suit was filed within six months after the date when the contract would have expired if the wells had not been drilled.

There is another principle of law, however, that is applicable to this case; that is, that the contract of lease is indivisible, and that, having divided the property and disposed of a part of it, the plaintiffs cannot now maintain an action to dissolve the lease as to all the land, and, therefore, cannot maintain an action to dissolve the contract as to that portion of the land retained by them. When the plaintiffs and their two sisters accepted the succession of their mother unconditionally and without the benefit of inventory, the entire tract of land was subject to the indivisible contract of lease. By dividing the land into four lots, they could not affect the rights of the lessee on the entire tract. As was said in the case of Murray v. Barnhart, supra, the grantee's obligation to drill a well was indivisible in its nature, and the grantor's corresponding obligation to deliver the land was likewise indivisible; if the obligation of one of the parties to a contract is to be fulfilled entirely, the obligation of the other contracting party must likewise be fulfilled in whole. The plaintiff, Mrs. Parrott, sold the 6-acre tract from the 75 which she had acquired in the partition to William Claiborne on the 12th of February, 1912. The grantee then had the right to drill a well on any part of the entire tract described in the lease at any time before the 21st of June, 1912, and one of the wells was drilled on the 6 acres sold to William Claiborne. The royalty was paid to him on the 17th of April, 1912, and again on the 7th of April, 1913. William Claiborne and two of the four heirs of John H. Harris and his wife are not parties to this suit. Hence the contract of lease cannot, in this suit, be annulled as to the portion of the land owned by them. It is well settled that where a party to an indivisible contract has, by his disposition of a part of the property subject to the contract, rendered it impossible for him to accomplish the resolutory condition and restore matters to

the same situation as though the contract had not been made, he cannot maintain an action against the other party to the contract to dissolve it. See Miguez v. Delcambre, 125 La. 193, 51 South. 108; Barrow & Le Blanc v. Penick & Ford, 110 La. 573, 34 South. 691; Bryant v. Stothart, 46 La. Ann. 489, 15 South. 76; Castle v. Floyd, 38 La. Ann. 589.

In an assignment of errors, the appellants complain of the judgment sustaining the defendant's plea to the jurisdiction of the court ratione materiæ and dismissing their demand for damages. We have some doubt as to whether the appeal taken by the plaintiffs from the judgment rendered on their action of nullity was also an appeal from the judgment dismissing their demand for damages, which had been rendered and signed during a previous term of the court. Be that as it may, our conclusion that the defendant did not violate the contract of lease disposes of the action for damages if it is before us on this appeal.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellants.