O’NIELL, Chief Justice.
 

 This is a suit to have a contract of lease adjudged terminated by the death of the lessor, who had only the life usufruct of the property. The plaintiffs are the owners' of the property. They are the six sons and daughters and a grandson, the latter representing a deceased son, of R. J. Nelson, deceased. The plaintiffs acquired title to the leased property, which is a store building in the city of Monroe, as a legacy from their uncle, James L. Nelson. He died in 1908, and in his will he bequeathed his estate to the seven children of his deceased brother, R. J. Nelson, and bequeathed the usufruct of the estate to his widow, Mrs. Martha Nelson. She leased the store to the Dan Cohen Co., Inc., defendant in this suit, on February 1, 1934, for the term of five years, at the rental of $200 per month, with the privilege of renewal for an additional term of five years at $300 per month, at the option of the lessee. Mrs. Nelson was then 92 years of age. She died on the 23d of April, 1936. Four days after her death, the parties who are the plaintiffs in this suit, as owners of the property, served a written notice on the Dan Cohen Company, as lessee, that the lease was terminated by the death of Mrs. Nelson, who had only a life usufruct of the property. The Dan Cohen Company, after considerable correspondence and discussion, deniéd that the lease was terminated by the death of the lessor, and insisted that the lease should continue to the end of the term stipulated. Thereafter, the parties who are the plaintiffs in this suit, and who were collateral heirs of Mrs. Martha Nelson, inheriting one-eighth of her estate, joined in a petition with the other collateral heirs of Mrs. Nelson, inheriting seven-eighths of her estate, to be recognized as her heirs at law, and to be sent into possession of her estate unconditionally and without the benefit of inventory. An ex parte judgment was rendered accordingly. Thereafter, the parties who are the plaintiffs in this suit, as owners of the leased premises, served a formal demand on the Dan Cohen Company to vacate the leased premises; and, upon the ' company’s refusal to vacate, the owners brought this suit.
 

 The defendant, before answering the petition, filed a plea, termed a plea of estoppel and of no cause or right of action, to the effect that the plaintiffs, by accepting their share of the succession of Mrs. Martha Nelson, unconditionally and without the benefit of inventory, assumed all of her obligations, and particularly the obligation of warranty, to defend the lessee’s possession of the leased premises for the full term of the lease! In that connection, the defendant averred that the contract of lease, on the part of Mrs. Nelson, was an unqualified or unconditional contract of lease for the term stipulated. The averment had reference to the fact that Mrs. Nelson was not referred
 
 *835
 
 to in the lease as the usufructuary of the property, and, did not sign the lease as usufructuary, but was referred to in the lease merely as “hereinafter called lessor,” and signed her name without any designation, either as owner or usufructuary of the property. Hence the defendant pleaded thdt the plaintiffs were estopped by their unconditional acceptance of the succession of the lessor, and had no right of action to contest the lease. The plea was overruled. The plaintiffs then filed a supplemental petition, averring that the Dan Cohen Company, and its members and authorized representatives who acted for the company in negotiating for the lease, were informed by the parties representing Mrs. Nelson, that she did not own the property but had only an usufruct, which would terminate at her death. In their supplemental petition, the plaintiffs set forth all of the letters that had passed between them'and the Dan Cohen Company, between the date of the death of Mrs. Nelson and the time when they and the other collateral heirs of Mrs. Nelson accepted her succession. The purpose of disclosing this correspondence was to show that, before the owners of the leased premises accepted the succession of Mrs. Nelson, they, the owners of the property, and the lessee, had come to such an impasse in their attempt to settle the controversy, that a lawsuit was inevitable.
 

 After the supplemental petition was filed, the defendant answered the suit, and admitted all of the material allegations of fact, except the allegation that the defendant was informed or knew, before or at the time of entering into the contract of lease, that Mrs. Nelson was only the usufructuary, or that she was not the owner, of the property. On the contrary, the defendant averred that none of the member? or representatives of the company was informed or knew, previous to the death of Mrs. Nelson, that she was only the usufructuary, or was hot the owner, of the leased premises. The defendant reiterated the plea that the plaintiffs, by accepting unconditionally their interest in the succession of Mrs. Nelson, assumed all of her obligations, and particularly the obligation to warrant and defend the lessee’s possession of the leased premises to the end of the term stipulated in the lease. The defendant averred that the plaintiffs had,- inherited their title to the leased premises, at least in part, from Mrs. Martha Nelson. But that allegation was a mistake. It is not now disputed that the plaintiffs’ ownership of the leased premises came entirely by virtue of the last will of their uncle, James L. Nelson. Mrs. Nelson never had any title or interest in this property except as usufructuary.
 

 After hearing the case on its merits the judge decided in favor of the plaintiffs, declaring the lease teiminated by the death of the lessor, and allowing the plaintiffs $300 per month rent thereafter, and ordering the defendant to deliver possession of the leased premises to the plaintiffs. The defendant has appealed from the decision. The plaintiffs, answering the appeal, pray for an increase of the allowance of rental to $350 per month, as prayed for in their petition.
 

 The defense of this suit is based entirely upon the doctrine that, if an heir accepts unconditionally, and without the benefit of inventory, the succession of the per
 
 *837
 
 son from whom the heir has inherited, he thereby makes himself liable for all of the obligations of the deceased, including his obligations of warranty, and is therefore debarred from suing to recover from a third person property which the deceased sold under a warranty deed. The doctrine is recognized in the following cases, cited by counsel for the defendant, viz.: Stokes v. Shackleford, 12 La. 170; Smith v. Elliot, 9 Rob. 3; Cochran v. Gulf Refining Co., 139 La. 1010, 72 So. 718; Griffing v. Taft, 151 La. 442, 91 So. 832; Berry v. Wagner, 151 La. 456, 91 So. 837. In all of these cases, except Cochran v. Gulf Refining Co., which will be explained hereafter, the obligation was a warranty of title in an act of sale. Such a warranty obligation, of course, is not extinguished by the death of the warrantor, but survives as an obligation of his succession. But the obligation of a lessor, to warrant and defend the lessee’s right of possession of the leased premises, survives as an obligation of the succession of the lessor, in the event of his death before the expiration of the term of the lease, only in cases where the lessor claimed ownership of the leased premises. Article 2730 of the Civil Code declares that a lease made by one having only the usufruct of the property ends when the right of usufruct ceases, and that the lessee has no claim against the heirs of the deceased usufructuary, for indemnification, if the usufructuary made known to the lessee that he, the lessor, had only the usufruct — and not the ownership —of the property. In Cochran v. Gulf Refining Co., the lease was not an ordinary lease, for the occupancy of a house or tract of land, hut was an oil and gas lease. The widow of the lessor, or “grantor,” as he was called, owning a half interest in the land and having the usufruct of the other half interest, granted extensions of the time in which the lessee should begin drilling a well. She died before the last extension of the lease expired; and her four daughters accepted her succession unconditionally and partitioned the leased property in kind, and permitted the lessee to drill three wells on the land within the extended term of the lease. Thereafter, two of the daughters, one of whom had sold a part of the land that was allotted to her in the partition, sued to annul the lease in so far as it affected their lands; and it was held that, by accepting the succession of their mother unconditionally, they had assumed her obligation to warrant and defend the possession of the lessee. In the decision in that case the court regarded the oil and gas lease more as a sale of a real right than as an ordinary lease for the occupancy of a house or land. It had been said, in Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623, 624, referring to oil and gas leases, “There is scarcely any comparison between them and the ordinary farm or house lease.” In the present case, counsel for the defendant cite in their brief the ruling in Tippet v. Jett, 10 La. 359, that a lessee cannot dispute the title of his lessor during the term of the lease. But that is not applicable to an oil and gas lease, because, in Nabors Oil & Gas Co. v. Louisiana Oil Refining Corporation, 151 La. 361, 364, 91 So. 765, 766, 767, it was said: “The doctrine that an ordinary lessee cannot dispute the title of his lessor during the time of the lease has no application to a contract in the form of an oil
 
 *839
 
 and gas lease by which a person acquires mineral rights, it being more like a sale than an ordinary lease,” etc.
 

 It may be that the doctrine of Rives v. Gulf Refining Co. and Nabors Oil & Gas Co. v. Louisiana Oil Refining Corporation does not accord with the decision in the recent case of Gulf Refining
 
 Co.
 
 v. Glassell, 186 La. 190, 171 So. 846; but Cochran v. Gulf Refining Co. was decided in the light of the earlier decisions on the subject.
 

 The law that governs this case is in articles 555, 606, and 2730 of the Civil Code, viz.:
 

 “555. The usufructuary may enjoy by himself or lease to another, or even sell or give away his rightbut all the contracts or agreements which he makes in this respect, whatever duration he may have intended to give them, cease of right at the expiration of the usufruct.”
 

 “606. The right of the usufruct expires at the death of the usufructuary.”
 

 “2730. A lease made by one having a right of usufruct, ends when the right of usufruct ceases.
 

 “The lessee has no right to an indemnification from the heirs of the lessor, if the lessor has made known to him the title under which he possessed.”
 

 Á lease made by an usufructuary, therefore, “ceases of right at the expiration of the usufruct,” whether the lessor informed the lessee, or failed to inform him, before or at the time of making the lease, that he, the lessor, was only the usufructuary, and not the owner, of the property. It is the right of the lessee to be indemnified by the heirs of the lessor, if the lessor is only the usufructuary and if he dies before the expiration of the term of the lease, that depends upon whether the lessor failed to make known to the lessee that he, the lessor, was not the owner but only the usufructuary of the property. That is the precise language and meaning of article 2730 of the Civil Code. An usufructuary cannot, by failing to disclose to a lessee that he, the lessor, is not the owner but only the usufructuary of the property, deprive the owner of his right under the law which says that such a lease “ceases of right at the expiration of the usufruct.” The second paragraph of article 2730 is intended to protect one who leases property from an usufructuary under the belief on the part of the lessee that the lessor is the owner of the property. The reason for that is given in article 2682 of the Civil Code, thus: “He who lets out the property of another, warrants the enjoyment of it against the claim of the owner.”
 

 The judge who tried this case says in the written reasons for his decree that the evidence convinced him that the members and representatives of the Dan Cohen Company were informed when they were negotiating for the lease that Mrs. Nelson was not the owner but only the usufructuary of the property. On behalf of Mrs. Nelson, the negotiations were carried on by a son-in-law of one of the plaintiffs in this suit, the son-in-law being the president of a national bank in Monroe; and by the husband of one of the' plaintiffs, the husband being in charge of the making of leases for Mrs. Martha Nelson; and by a son of one of the plaintiffs, the son being a
 
 *841
 
 practicing attorney at law in Monroe. All of these representatives of Mrs.' Nelson testified that the parties representing the Dan Cohen Company in the negotiations were informed that Mrs. Nelson was not the owner but had only the life Usufruct of the property. The negotiations on the part of the Dan Cohen Company were carried on by the president and another executive of the company, and by a prominent real estate agent, doing business in New Orleans, who was employed as broker by the Dan Cohen Company to negotiate for the lease. The broker went to Monroe and opened the negotiations with the bank president, representing Mrs. Nelson, more than three months before the lease was signed. • The president of the Dan Cohen Company came from Cincinnati to Monroe to lend his aid to the negotiations; and the other executive of the company, whose duties included the obtaining of-leases for the company, came to Monroe two or three times during the negotiations. The real estate agent and the president and the other executive of the Dan Cohen Company testified that they were not informed at any time before the death of Mrs. Nelson that she was not the owner of the property but only the usufructuary. It is not casting any reflection upon this testimony to say that the testimony for the plaintiffs is corroborated by the strong presumption that they and Mrs. Nelson would not have withheld from the lessee such important information. The testimony for the plaintiffs on this subject is• corroborated also by the fact that the public records in the conveyance office in Monroe disclosed that Mrs. Martha Nelson had not the ownership, but only the life usufruct of the property of which the Dan Cohen Company was negotiating to obtain a lease.
 

 On the trial of the case counsel for the defendant objected to the introduction of testimony to prove that the defendant was informed, before' the lease was signed, that the lessor was not the owner but the usufructuary of the property. It is contended that the allowing of such testimony to be introduced was violative of the rule of evidence laid down in article 2276 of the Civil Code — that .parol evidence is not admissible against or beyond what is contained in a written deed, nor as to what may have been said before or at the time of making the deed, or since. The testimony which was introduced over the defendant’s objection in this case did not tend to contradict, or add to or detract from, anything that was contained in the written contract of lease. It was not declared in the contract that the lessor was the owner of the property. Article 2730 of the Civil Code, by necessary implication, provides that, when a person has obtained a lease from an usufructuary, and the usufructuary dies before the term of the lease has expired, the question whether the lessee was informed in advance that the lessor was not the owner but the usufructuary of the property is open to proof; and there is no indication in this article of the Code that the proof must be made by written evidence. In the case of New Orleans & Carrollton Railroad Co. v. Darms, 39 La.Ann. 766, 2 So. 230, it was held that parol evidence was admissible to prove that during the negotiations for a lease the lessee was warned by the lessor that a certain specified
 
 *843
 
 use of the premises would not be permitted. Our conclusion is that the parol evidence in this case was admissible.
 

 Adverting now to the appellees’ answer to the appeal, we deem it sufficient to say that the judge who tried the case, and who lives in Monroe, was in a better position than we are to determine the remal value of the property. Although the testimony, or estimates, on the subject might have justified a greater allowance, we do not find that the allowance which the judge made was wrong.
 

 The judgment is affirmed.
 

 LAND and HIGGINS, JJ., concur in result.
 

 FOURNET, J., concurs.