Durphy VINCENT, Mrs. Allie Murphy, Jules Vincent, John Whitney Vincent, Jr.; Mona Rae Vincent, Allora Jean Vincent and Rondell Vincent, Minors Through Tutrix Mrs. Rita Vincent; Judy Ann Vincent, Minor Through Tutor John Voras Nunez; and Morris Vincent

v.

SUPERIOR OIL COMPANY, Fifteen Oil Company, and Humble Oil & Refining Company.

No. 7155.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Nov. 5, 1959.

J. B. Jones, Jr., Cameron, La., for plaintiffs.

Bernard J. Caillouet, New Orleans, La., Oliver P. Stockwell, Lake Charles, La., for defendants.

HUNTER, District Judge.

Federal jurisdiction is based on diversity. Plaintiffs are residents and citizens of Louisiana. Defendants are corporations organized under the laws of states other than Louisiana. The matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000.

### Louisiana Law Controls

██ Under the doctrine of Erie, the laws of Louisiana (statutes and decisions) provide the rules of decision. Therefore, the laws of Louisiana are to be ascertained and applied to the specific facts.

## Statement of the Case

In chronological sequence, certain undisputed facts pertinent and material to the questions before the Court are [1]:

(1) On June 9, 1904, Emile Vincent married Zalan Vincent.

(2) They established the family home on Little Chenier Island, a then remote section of Cameron Parish, Louisiana.

(3) Born to the marriage were six children. The last child, Maurice Vincent, was born February 9, 1918.

(4) Sometime in 1920 Mr. and Mrs. Vincent separated, and they did not maintain the same household from that time until June 27, 1957, the date of Zalan's death.

(5) On December 19, 1925, Emile Vincent, who was then living in Jefferson County, Texas, filed a suit there for divorce from Zalan Vincent. The divorce was never obtained; it was dismissed by the Court on January 18, 1936 for want of prosecution.

(6) The subject property was acquired by Zalan Vincent from her father on January 12, 1927, by deed in which the marital status of Zalan Vincent was stated as follows:

"Mrs. Zalan Vincent (born Benoit), widow of Emile Vincent, divorced by a judgment of court in the County of Jefferson, State of Texas."

(7) The consideration stated for the transfer to Zalan from her father was $500, with no down payment, and the balance represented by ten notes, payable $50 per year.

(8) In 1937 when Humble Oil was doing title curative work, Mr. Allison T. Miller, an employee of Humble, picked up the notes securing the purchase price of the property at the home of Mrs. Zalan Vincent, and took them to Cameron where they were canceled of record on December 10, 1937.

(9) From the date of the deed until these notes were canceled, Mrs. Zalan Vincent made the following leases and sales of the subject property.

(a) Oil and gas lease from Mrs. Zalan Vincent to The Texas Company, dated June 25, 1928, in which she received a consideration of $16.62 (D-26). Marital status stated as follows: "Zellen Vincent, born Benoit, separate property, formerly wife of Emile Vincent from whom she is separated and living apart."

(b) Oil and gas lease from Mrs. Zalan Vincent to John B. Daigle, dated July 25, 1936, introduced as D-27, in which she received the sum of $66.00. Marital status stated as follows: "Zalan Vincent, born Benoit, divorced wife of Emile Vincent."

(c) Royalty deed from Zalan Vincent to John B. Daigle, dated July 20, 1936, in which she received $132.00 (D-12). Marital status stated as follows: "Mrs. Zallan Vincent, born Benoit, divorced wife of Emile Vincent."

(d) Royalty deed from Zalan Vincent to Drozan Miller, dated October 24, 1936, in which she received $247.-50. (D-9). Marital status stated as follows: "Mrs. Zallan Vincent, born Benoit, divorced wife of Emile Vincent."

(e) Royalty deed from Mrs. Zalan Vincent, born Benoit, to Joe E. Bass, Jr., dated April 16, 1937, in which she received $330.00 (D-11). Marital status stated as follows: "Mrs. Zalan Vincent, born Benoit, divorced wife of Emile Vincent."

(10) The lease under attack was granted by Mrs. Zalan Vincent to Superior on October 28, 1953 for a primary term of five years. The delay rentals were paid each year, and on June 21, 1958 a unit declaration was executed and filed for record on June 23, 1958, in accordance with the terms of said lease, pooling the lease with other leases owned

---

1. There are other factual issues which are in dispute, and they will be dealt with elsewhere.

by the Fifteen Oil Company and Humble Oil Company, to form a 160-acre unit. Humble, as the operator of the unit, commenced operations for the drilling of a well on June 18, 1958.

(11) The form lease executed by Mrs. Zalan Vincent to Superior set forth Mrs. Vincent's marital status as follows:

"Mrs. Zalan Vincent, married one time only, then to Emile Vincent, from whom she was divorced by judgment of the Court in Jefferson County, Texas, prior to acquiring the land herein leased."

(12) On July 17, 1958, Emile Vincent signed a disclaimer to any interest in the subject property. This disclaimer is a notarized affidavit by Emile Vincent which contains in pertinent part the following statements:

"Mrs. Zalan Vincent and her husband, Emile Vincent, have not lived together since about 1920;

"Now, I, Emile Vincent, former husband of Mrs. Zalan Vincent, now deceased, do hereby declare that the property hereinafter described was the separate and paraphernal property of Mrs. Zalan Vincent, having been acquired by her after she and appearer started living apart and was paid for with her separate funds and that he does hereby disclaim any rights, titles, and interest in and to said property."

(13) The well was spudded in on July 26, 1958, and completed as a producer on August 22, 1958.

(14) This suit was filed in State Court on August 20, 1958, and removed here on September 20, 1958.

(15) Zalan Vincent died in Hurricane Audrey in 1957, and her heirs and former husband, Emile Vincent, seek cancellation of the lease granted by Zalan Vincent on the proposition that the property covered by the lease was purchased during the existence of the marriage between Zalan Vincent and Emile Vincent, and therefore was community property, and that only Emile Vincent had the authority to grant a lease covering the property. Plaintiffs urge that the property is owned one-half by the heirs of Zalan and the other one-half by Emile Vincent, free of the lease and unitization agreement.

## The Pleadings

The motion to dismiss and/or for summary judgment, as to the heirs of Zalan Vincent, was predicated on the proposition that the filing of this suit by the heirs of Zalan Vincent constituted an acceptance of her succession and bound the heirs by her warranty. The Court at the time was of the opinion that the legal principle asserted by defendants as to the claims of the heirs of Zalan Vincent was correct, but because the case had to be tried as to the other plaintiff, denied the motions and permitted the entire case to be tried on its merits.

The motion for summary judgment as to Emile Vincent was based on the fact that Emile had executed a declaration on July 17, 1958, disclaiming any interest in the property and conceding that it was the separate and paraphernal property of Zalan. This motion was denied.

Defendants filed their answer, in which they admitted the execution of the deed, the lease and the unit agreement, and re-urged their special defenses in that the heirs of Zalan Vincent, in accepting her succession, were bound by her warranty, and that Emile Vincent was foreclosed in his claim by the declaration which he executed. In the alternative, defendants set out that subject property was the separate and paraphernal property of Zalan Vincent.

Further, in the alternative, defendants set up a special plea of estoppel as to both Emile Vincent and the heirs of Zalan Vincent; and in the further alternatives, defendants filed a cross claim against those plaintiffs who were the heirs of Zalan Vincent on the premise that they had accepted her succession and became bound by the warranty in the oil, gas and mineral lease, and were obligated to maintain defendants in the undisturbed possession of the property.

Our approach to a resolution of the case is to first consider the special defenses:

### The Heirs of Mrs. Zalan Vincent

■ Mrs. Zalan Vincent granted the lease to Superior on October 28, 1953. In the lease which was properly authenticated she stated her name and marital status to be:

"Mrs. Zalan Vincent, married one time only, then to Emile Vincent, from whom she was divorced by judgment of the court in Jefferson County, Texas, prior to acquiring the land herein leased."

Plaintiffs do not allege, nor is there any evidence, that the lease granted by Zalan was secured by fraud. Mr. Toler had been leasing land in Cameron Parish for several years; he made a deal with Zalan for the lease, and she came to Cameron with her daughter, Mrs. Allie Murphy, and went to Mr. Herbert's office to sign the lease which she had agreed on. Zalan had experience in granting oil, gas and mineral leases, for she had already granted four leases on this property starting in 1928, and had made four royalty sales affecting the same property.

When the heirs of Zalan Vincent instituted this suit, they accepted her succession and became bound by her warranty. Cook v. Martin, 188 La. 1063, 178 So. 881. The precise issue here involved was considered by the Supreme Court of Louisiana in Cochran v. Gulf Refining Company, 1916, 139 La. 1010, 72 So. 718, 721. There, the suit involved a demand for the cancellation of an oil and gas lease. In maintaining the lease, the Supreme Court of Louisiana said:

This doctrine in the civil law is expressed in the maxim: 'Quem de evictione tenet actio, eundum agentem repellit exceptio.' By their acceptance of the succession of their mother, unconditionally and without the benefit of inventory, the plaintiffs assumed her obligations with regard to the land which they received and partitioned among themselves and the coheirs. *They acquired no greater right than their mother had with respect to the land of which they inherited an undivided half from her;* and she was bound to respect her contract extending the term of the lease on the entire tract. Hence the contract, if originally valid, was in full force and effect when the two gas wells were drilled; and the question of validity or nullity of the contract from the beginning is to be determined as if the original grantor were the plaintiff in this case." (Emphasis ours.)

Chief Justice Fournet cited Cochran with approval in Cook v. Martin, 188 La. 1063, 178 So. 881, 882:

"Moreover, when the plaintiffs instituted this suit, they accepted the succession of Nancy Cook unconditionally, Rev.Civ.Code, art. 988; McQueen v. Sandel, 15 La.Ann. 140; Brashear v. Conner, 29 La.Ann. 347; Sevier v. Gordon, 29 La.Ann. 440; McCall v. Irion, 41 La.Ann. 1126, 6 So. 845; Heirs of Ledoux v. Lavedan, 52 La.Ann. 311, 354, 27 So. 196; Buillard v. Davis, 185 La. 255, 169 So. 78, and by such acceptance incurred the obligation of warranty of their ancestor and are now estopped from claiming title to the property. Walker v. Fort, 3 La. 535; Stokes v. Shackleford, 12 La. 170; Smith v. Elliot, 9 Rob. 3; Gusman v. Berryman, Man.Unrep.Cas. 199; McQueen v. Sandel, 15 La.Ann. 140; Sevier v. Gordon, 29 La.Ann. 440; Chevalley v. Pettit, 115 La. 407, 39 So. 113; Cochran v. Gulf Refining Co., 139 La. 1010, 72 So. 718; Berry v. Wagner, 151 La. 456, 91 So. 837; Soule v. West, 185 La. 655, 170 So. 26; Sparks v. Dan Cohen Co., 187 La. 830, 175 So. 590; Maisonneuve v. Martin, 155 La. 938, 99 So. 704." (Italics ours.)

Recently, in Eota Realty Co., Inc. v. Carter Oil Co., 225 La. 790, 74 So.2d 30, 34, the Louisiana Supreme Court again re-affirmed Cochran:

"In the case of Cochran v. Gulf Refining Co. of Louisiana, 139 La.

1010, 72 So. 718, which was a succession matter, a contiguous tract of land was involved. This Court held that one who accepts a succession unconditionally *is bound by the contract of lease granted by the one from whom he inherits*. By dividing the land into four lots, the heirs could not affect the lease taken for the whole. The heir to land could not prevail in a suit for the cancellation of a lease that affected her part of the property. Certainly, under these circumstances the lease was indivisible, and the grantor's obligation to deliver the land was likewise indivisible." (Emphasis ours.)

These pronouncements by the Supreme Court of Louisiana are dispositive of the issue of warranty and it is implicitly clear that the heirs of Zalan are bound by her warranty.

Even under Sparks v. Dan Cohen Co., 187 La. 830, 175 So. 590, 592, defendants' plea on this phase of the case is good. There, the Supreme Court said:

" * * * the obligation of a lessor, to warrant and defend the lessee's right of possession of the leased premises, survives as an obligation of the succession of the lessor, in the event of his death before the expiration of the term of the lease, only in cases where the lessor claimed ownership of the leased premises * * *"

Here, Zalan, by her actions and written representations (deeds, leases, etc.), claimed to be the owner of this property. In Dan Cohen the trial court found as a fact that representatives of the Dan Cohen Company had been informed when negotiating for the lease that Mrs. Nelson was not the owner but only the usufructuary of the property. Parol evidence was admitted in Dan Cohen only because it did not tend to contradict, or add to or detract from anything that was contained in the lease. Here, the lease to Superior (P-2) is an authentic act wherein Zalan very definitely represented the subject property to be her own and which contains a specific warranty (See paragraph 10 of the lease). While the Court believed very strongly that defendants' motion for summary judgment on this phase of the case was good, as a matter of law, we did permit the introduction of evidence. Even considering this evidence, it establishes that Zalan did represent the property to be her separate property (See P-8 and the lease itself, P-2).

The Court concludes that the heirs of Zalan Vincent are bound by the oil, gas and mineral lease (P-2) granted by their mother and their demands are rejected.

### The Disclaimer of July 17, 1958 Executed by Emile Vincent

We proceed to consider the demands of Emile Vincent. On July 17, 1958 he executed a disclaimer as to the subject property, which reads as follows:

"Know All Men By These Presents:

"That, Whereas, by deed dated the 12th day of January, 1927, John Benoit conveyed to Mrs. Zalan Vincent the following described property, to-wit:

" '66 acres of land off the West side of the W½ of SW¼ and SW¼ of NW¼ of Section 8, Township 14 South, Range 6 West, Louisiana Meridian, Cameron Parish, Louisiana,'

which deed appears of record in Book 9 of Conveyances, at page 154 of the records of Cameron Parish, Louisiana, reference thereto being made herein for all purposes; and

"Whereas, Mrs. Zalan Vincent entered into a boundary agreement with Whitney Vincent, et al, dated October 22, 1937, and recorded in Book 34 of Conveyances, at page 422, in which there was correctly described the property acquired by Mrs. Zalan Vincent from John Benoit as aforesaid; and

"Whereas, at the time of the acquisition of this property by Mrs. Zalan Vincent she and her husband were living separate and apart and that the property was bought with her separate funds under her separate administration and control; and

"Whereas, Mrs. Zalan Vincent and her husband, Emile Vincent, have not lived together since about 1920;

"Now, I, Emile Vincent, former husband of Mrs. Zalan Vincent, now deceased, do hereby declare that the property hereinafter described was the separate and paraphernal property of Mrs. Zalan Vincent, having been acquired by her after she and appearer started living apart and was paid for with her separate funds and that he does hereby disclaim any rights, titles and interest in and to said property described as follows, to-wit:

" '66 acres in the W½ of SW¼ and the SW¼ of NW¼ of Section 8, Township 14 South, Range 6 West, bounded on the North by land of Miami Corporation, on the East by lands of Heirs of Whitney Vincent, on the South by South line of Section 8, and on the West by lands of Miami Corporation, Jules Vincent and Margaret B. Trahan, and particularly described in the boundary agreement dated October 22, 1937, appearing of record in Book 34 of Conveyances, at page 422, of the records of Cameron Parish, Louisiana.'

"Thus Done And Signed in the presence of the undersigned competent witnesses, on this 17th day of July, 1958.
"Witnesses:
"/s/ E. P. Riley        /s/ Emile Vincent
"/s/ Mrs. U. E.
          Hackett         Emile Vincent"

Relying on Beltran v. Leche, 50 La. Ann. 385, 23 So. 203; Burns v. Rivero, 192 La. 767, 189 So. 129, and State ex rel. New Orleans Land Company v. Register of Conveyances, 139 La. 478, 71 So. 773, defendants urge that the disclaimer should be sustained and Emile Vincent's claim rejected.

█ Under normal circumstances, a disclaimer such as P-6 is a public declaration of the alleged owner that the property is not his; that he has no interest or right in it, and under normal circumstances estops him from asserting ownership. Let us examine the circumstances here.

█ Humble, the operator of the unit, of which the lease granted by Zalan formed a part, was preparing to drill a well on the unit and in the process was doing last minute title curative work. Pat Riley, an experienced land man employed by Humble, was doing this work. On or about the 16th day of July, 1958, Riley encountered information to the effect that the divorce between Emile Vincent and Zalan Vincent had never become final. The subject land was a necessary part of that land upon which defendants were drilling the well. Mr. Riley knew if Mr. Vincent and his wife were not divorced, the lease was in jeopardy because there existed a possibility that the property might be a part of the community existing, or that had existed, between Zalan and Emile. Mr. Riley went to Mr. Vincent's home in Cameron on the evening of July 16, 1958. The testimony as to just what happened at that first visit is hopelessly in conflict. What was Mr. Vincent's condition on that day? Mr. Riley sincerely thought that he was fully capable of contracting and conducting business affairs on July 16, 1958 and July 17, 1958. Mrs. Murphy disagrees. The Court observed Mr. Vincent on the trial of this case in July of 1959, and at that time the Court finds that he was in no condition, mentally or physically, to transact business affairs or to make any type of contract. Testimony was given to the effect that Mr. Vincent was not in as good condition one year before as he was in July of 1959. On the basis of this testimony, we find that Mr. Vincent's condition on July 17, 1958 was substantially what it was on July 16, 1959. Mr. Vincent is approximately 80 years of age, his eyesight is extremely poor, he has many physical infirmities, he is illiterate and has difficulty hearing, he cannot read or write any language, and he has difficulty speaking and understanding the English language. All of these conditions are observed by Dr. Clark as having been in effect on July 30, 1959, as well as on January 9, 1958. Mr. Vincent was advised that the disclaimer, P-6, which

he was signing, would in effect give the land at Little Chenier to his children. Mr. Riley's sole representation to Mr. Vincent was to this effect. In truth, the disclaimer is an admission by Mr. Vincent that he never owned an interest in the property, and it is, in effect, a ratification by him of the oil, gas and mineral lease by Zalan to Superior. Of course, the disclaimer did have the additional legal effect of clearing the children's title to the property. Mr. Riley's reason for obtaining Mr. Vincent's signature on P–6 was to remove a cloud on the lease. Mr. Riley sought out Mr. Vincent. Mr. Riley was a man experienced with business affairs. Mr. Vincent was an uneducated, illiterate, sick man. Mr. Riley did not inform Mr. Vincent of the effect of the instrument which he signed, insofar as it affected the lease. From a careful analysis of all the testimony in this case, the Court is convinced that Mr. Vincent was ignorant of his rights when he signed the disclaimer. In view of all the facts and the hasty manner and the circumstances prevailing at the time the instrument was executed, this instrument should be annulled and set aside, and the parties placed back in the positions they occupied before it was executed. We do *not* believe that an intentional fraud was perpetrated on Emile Vincent, but the evidence does show that Mr. Riley was cognizant of all the effects of the instrument, and that Mr. Vincent was ignorant of them and laboring under an entirely different impression. The Supreme Court of Louisiana, in Succession of Molaison, 213 La. 378, 34 So.2d 897, 903, said:

"Where parties of somewhat equal experience and mental capacities enter into an engagement, the courts are reluctant to disturb it unless there is fraud. However, it is the duty of the courts to carefully and painstakingly investigate the circumstances surrounding transactions between a person of limited mental capacity and one experienced in business affairs, in order that

substantial justice might be meted out."

We believe the language of Molaison to be applicable here. The facts of this case are even stronger, for here, Mr. Riley offered an explanation of P–6, stating that its effect was to fix up the land as Little Chenier for the children. There was certainly no meeting of the minds as to the full extent of the legal effects of the instrument or its accomplishments and results. All agree that Mr. Riley's purpose in obtaining Mr. Vincent's signature on P–6 was to remove any possible jeopardy to his employer's lease. Mr. Vincent's intention, on the other hand, was to give the property to his children. The crux of the matter is that P–6 accomplished a purpose and had a result completely foreign to the intention of Mr. Emile Vincent.

Mr. Vincent's incapacity to contract at the time of the execution of P–6 in itself alone is not enough to set aside the disclaimer. But this fact, coupled with his advanced age, his limited mental capacity, his inability to read or write, his poor hearing, and other physical infirmities, together with the fact that he was dealing with a person of experience and knowledge, and the fact that Mr. Vincent did not know his rights or the import of the instrument he signed, require that the disclaimer be set aside.

Accordingly, it is necessary to consider whether subject property was separate or community.

### Was Subject Property The Separate and Paraphernal Property of Zalan Vincent?

■■ The determination of the community or paraphernal status of property claimed by one of the spouses has repeatedly received the consideration of Louisiana's highest courts. From the jurisprudence, certain legal principles have been firmly established which are uniformly recognized by bench and bar. It is no longer subject to serious question that the status of the property is fixed at the time of its purchase, and where

it was acquired during the existence of community, the presumption is that it is community property [2]. The presumption so created can be overcome upon proper proof, the requirements of which were pronounced in Betz v. Riviere [3], wherein the Supreme Court of Louisiana stated:

"Under our community system of law all property acquired by either spouse during the existence of the marriage is presumed to fall into the community of acquets and gains and to overcome this presumption the wife claiming the property in her own name to be her separate property must establish (1) the paraphernality of the funds used for the purchase; and (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98; Succession of Burke, 107 La. 82, 31 So. 391; Fortier v. Barry, 111 La. 776, 35 So. 900; Houghton v. Hall, 177 La. 237, 148 So. 37 and Montgomery v. Bouanchaud, 179 La. 312, 315, 154 So. 8."

The evidence here establishes that although Mrs. Zalan Vincent and Emile Vincent thought that they were legally divorced on January 12, 1927, when Zalan Vincent purchased the property from her father, John Benoit, neverthe-

less, it has been proven that the divorce never became final. Therefore, they were legally married at the time of the purchase, although they had been living separate and apart since 1920. Accordingly, the presumption is that the property was community—or to put it another way, defendants are confronted with the necessity of proving to a legal certainty that the property was Zalan's separate and paraphernal property.

In determining the nature of the property at bar, we take such evidence as the nature of the case permits and bring to bear upon it the experiences and observations of life, weigh it with prudence and care, and give effect to the jurisprudence. Let us review the evidence.

██ Both Emile and Zalan Vincent signed numerous written documents which appear of record in the public records of Cameron Parish, Louisiana, representing that they were divorced. The uncontradicted testimony is that the public generally, including several of plaintiffs, considered that Zalan and Emile had been separated since 1920. We find as a fact that Zalan Vincent and her husband were living separate and apart at the time the property was acquired, and continued to live separate and apart until Zalan's death [4]. We further find that this "living separate and apart" referred to in the immediate preceding sentence was of such a nature as to constitute living separate and apart within the meaning of Louisiana Civil Code Article 2334, LSA, which reads:

"The property of married persons is divided into separate and common property.

"Separate property is that which either party brings into the marriage, or acquires during the mar-

---

2. LSA–Civil Code, arts. 2399, 2402, and 2405.

3. 211 La. 43, 29 So.2d 465–472.

4. Testimony of E. D. Sweeney, P–6, P–7, P–8. Mr. Sweeney testified that Mr. Benoit was 75 or 80 years old when he deeded the property to his daughter, Zalan; that Emile Vincent was not present when the deed was executed, and that he and Zalan were separated at the time; and that Zalan furnished him (Sweeney) the information concerning her marital status. Sweeney also testified that Benoit stated that Zalan owned separate property, and that she and Emile were separated at the time. (See 11–19 of Transcript.)

riage with separate funds, or by inheritance, or by donation made to him or her particularly.

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.

"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent. (As amended by Acts 1920, No. 186)."

For more than a quarter of a century, this property has stood up on the public records in the name of the wife. During this long period, her title has not been attacked or questioned, so far as the record informs us, until today. Let us look at the record to ascertain what the husband and wife thought the status of the property to be. Emile Vincent conceded that he did not contribute to the purchase price of the property. *Emile Vincent admitted to Pat Riley (P–7) that the property was purchased long after he and Zalan had separated, and that it was purchased with Zalan's own money from her father* (see also P–6, dealt with elsewhere). Zalan Vincent, by affidavits before Charles F. Hebert, Notary, on October 28, 1953, stated that the property was acquired by her after being divorced, and that it was paid for by money earned by her (P–8). Zalan certainly considered this as her separate property, and the same was so considered by those who dealt with her over many years, as shown by P–2, D–5, D–9, D–10, D–11, D–12, D–13, D–14, D–15, D–26, D–27 and D–28 [5].

In the recent case of Butler v. Burks, La.App., 99 So.2d 180, the Supreme Court of Louisiana had occasion to review the jurisprudence of Louisiana on the status of property where the original sale, as here, did not require a down payment. The Court · there accepted the

5. Reference is made to the deed introduced by plaintiffs as P–14 upon which they place great stress. Defendants introduced P–14(a) to show that the original deed had been added to after the signature of Emile Vincent had been authenticated. P–14 is a Clerk's Form Cash Deed and involved property other than that in this suit and was introduced as evidence that Emile Vincent and Zalan Vincent were living together as man and wife on November 25, 1927, which was ten months after the deed to Zalan Vincent on January 12, 1927. E. D. Sweeney, who at the time of the execution of these deeds was Clerk of Court in Cameron Parish, and the Notary Public on the acknowledgment in P–14, stated that the signature of Zalan Vincent was added after he had authenticated the deed. Whether someone went to Zalan's home and secured her signature after the deed was executed, as testified by Jules Vincent, is of little moment, since it has been clearly established by the evidence that Zalan and Emile were living separate and apart at the time Zalan acquired the property from her father. Accepting as we do Jules Vincent's version to the effect that after Emile signed the deed that those loaning money to Jules would not loan money on the property unless Zalan's signature was acquired, indicates to us that it was considered in the community that Emile and Zalan had been legally divorced, and that the statement placed in the deed that they were still man and wife was contrary to the facts, and those loaning money considered that the community was dissolved, and that the property was owned by Emile and Zalan, and that her signature was necessary. This is the only logical explanation, since Zalan's signature was not necessary for the cash sale if the community was intact.

conditions imposed in Betz (supra), and found that plaintiff had met the burden. We proceed to apply the tests as did the Court in Butler.

■ *First,* plaintiff must show the paraphernality of the funds used by Zalan as the price or consideration for the purchase. Here, as in Butler, no serious question is presented for the sale by Benoit to his daughter Zalan, which did not require a down payment. The only consideration was an agreement to pay $50 per year for a period of ten years.

*Second,* the wife must show her individual administration of the property. The principle enunciated is that evidence of a wife's complete administration of the property, unassisted by her husband, is indicative of its paraphernality. We reiterate that for more than a quarter century everyone has always considered this property as the separate and paraphernal property of Zalan. She executed numerous leases on it and made various royalty sales from it. She kept it under fence and cultivation (D–1). There can be no question that she actually and individually administered this property. Emile Vincent concedes he had nothing to do with it. Zalan Vincent individually administered this property, as witnessed by the following acts:

(a) Lease dated June 25, 1928, from Mrs. Zalan Vincent to The Texas Company, stated: "Mrs. Zellen Vincent, born Benoit, separate property, formerly wife of Emile Vincent from whom she is separate and living apart." D–26.

(b) Lease dated July 5, 1936, from Mrs. Zalan Vincent to John B. Daigle, stated: "Mrs. Zalan Vincent, born Benoit, divorced wife of Emile Vincent, a resident of Cameron Parish, Louisiana * * *." D–27.

(c) Lease dated March 28, 1944, to Albert D. Miller, in which it is stated: "Mrs. Zellen Vincent, born Benoit, divorced wife of Emile Vin-cent by her first and only marriage." D–5.

(d) Lease dated September 25, 1948, to Harrell Town, in which it is stated: "Zellan Vincent, separated from her husband Emile Vincent, herein dealing with her separate property." D–28.

(e) Lease dated October 28, 1953, being the lease in controversy, in which it is stated: "Mrs. Zalan Vincent, married one time only then to Emile Vincent, from whom she was divorced by judgment of the Court in Jefferson County, Texas, prior to acquiring the land herein leased." P–2.

(f) Royalty deed from Zalan Vincent to John B. Daigle, dated June 20, 1936, in which it is stated that "Mrs. Zallan Vincent, born Benoit, divorced wife of Emile Vincent." D–12.

(g) Royalty deed from Mrs. Zalan Vincent to Drozan Miller dated October 24, 1936, in which it is stated: "I, Mrs. Zallan Vincent, born Benoit, divorsed wife of Emile Vincent." D–9.

(h) Royalty deed from Mrs. Zalan Vincent to Joe E. Bass, Jr., dated April 16, 1937, in which it is stated: "Mrs. Zalan Vincent, born Benoit, divorced wife of Emile Vincent." D–11.

(i) Royalty deed from Mrs. Zalan Vincent to A. B. House, dated June 11, 1949, in which it is stated: "Zellan Vincent, a widow, this property was inherited from her parents." D–10.

(j) Agreement between Jules Vincent and Zalan Vincent, dated June 14, 1937, in which she stated: "Zallan Vincent, divorced wife of Emile Vincent." D–13.

(k) Transfer of Property to Jules Vincent, dated July 11, 1944, in which it is stated: "That I, Zellan Vincent, a widow" and also contains this: "And I, the said vendor do

declare on oath that when I acquired title to the herein described property I was a widow." D–14.

(1) Deed from Zalan Vincent to Maurice Vincent, dated June 1, 1945, in which it is stated: "That I, Zellan Vincent, divorced wife of Emile Vincent", and in which instrument it is further stated: "And I, the said vendor do declare that I acquired title to the described property through inheritance." D–15.

The final requirement to be met to rebut successfully the presumption of community status requires proof that the wife was possessed of sufficient separate revenues and funds to meet the deferred payments. This is affirmatively shown by the statement of Emile Vincent (P–7), and by the statement of Zalan Vincent (P–8). This is affirmatively shown by the proof adduced that she was living separate and apart from Emile and received no assistance from him, and that there was no community income, and that she was able to, and did work, and that she received from the property itself certain revenues sufficient to pay off all the payments prior to 1937. The consideration in the deed was $500, represented by ten notes of $50 each. The first note was payable one year after the date of the deed, which would be January 12, 1928. The notes were all cancelled on December 10, 1937, with the exception of one which was lost and was later cancelled. From the date of the deed until these notes were cancelled, the evidence establishes that Mrs. Zalan Vincent made the following leases and sales:

(a) Lease from Mrs. Zalan Vincent to The Texas Company, dated June 25, 1927, in which she received a consideration of $16.62 (D–26).

(b) Lease from Mrs. Zalan Vincent to John B. Daigle, dated July 25, 1936, introduced as D–27, in which she received the sum of $66.00.

(c) Royalty deed from Zalan Vincent to John B. Daigle, dated June 20, 1936, in which she received $132.00.

(d) Royalty deed from Zalan Vincent to Drozan Miller, dated October 24, 1936, in which she received $247.50.

(e) Royalty deed from Mrs. Zalan Vincent, born Benoit, to Joe E. Bass, Jr., dated April 16, 1937, in which she received $330.00.

The amounts received in these trades totalled $792.12. This does not include any renewal payments on the leases above, nor does it include any revenues that she herself might have earned by farming, or trapping, or sewing. With respect to the deferred payments, Zalan had the newly acquired property from her father, which property was sufficient security for the credit balance due. This fact alone suffices to meet the proof required as to the deferred payments (see Guilbeau v. Guilbeau, 224 La. 837, 71 So.2d 129. See language on page 132).

### Conclusion

We conclude that defendants have successfully overcome the presumption that the property was community property and have established the fact that the property was the separate property of Zalan Vincent. Accordingly, defendants' lease is valid, and plaintiffs' demands should be rejected. They are. Proper decree should be presented.